This is the third case of the day, 15-601-46 U.S. v. Crain. Mr. Sebeson. Good morning. May it please the Court. Go ahead. Good morning. We're here today for the Court to review the denial of a 2255. It's important to point out from the front end that the purpose of a 2255 is reserved for transgressions of constitutional rights and that narrow range of injuries that could not have been raised on direct appeal. Because if the Court does not interact, it would result in a complete miscarriage of justice. I think that's what we would have here if the Court did not act. We're here because— Well, I'm curious. Let me ask before you get into the details. That's sort of a big-picture question. I'm not really sure what the endgame is for your client, even if he were to prevail on this 2255. And it seems to me the real issue he has—I know he's upset about the lifetime of supervised release that he wasn't told about at the plea hearing, even though it was in the agreement. But the reality is, even if you win and he gets a do-over, I think it's highly likely the Court would impose that either on another guilty plea or a trial conviction. So it seems to me what he's really trying to get out from under, and the only thing he really has a realistic chance of getting out from under, is this permanent computer ban. Because there, there is some case law that if you've got to redo, you might be able to effectively challenge that. But if that's what this is really all about, why don't you just seek modification of that condition? Now, I understand you might have to wait until he's actually released. There's some issues about that. But courts often modify conditions of supervised release. The probation officer, these are reasonable people. They're going to want him to have a job. They're not going to want him to sit at home all day twiddling his thumbs, which is only a recipe for more trouble. So it seems to me there's a very strong likelihood this condition could be modified. Certainly, I think the Court would want to impose filtering software or things like that on any computer he used at work. But if that's the real issue, it just seems to me that's a much easier way to get the relief your client wants than all this complicated, lengthy litigation we're involved in now. Well, Your Honor, I think that there, in addition to the modification, I think the heart of this is that he was denied ineffective assistance. He was denied effective assistance of counsel. There is a constitutional Sixth Amendment implication that kind of sets the stage for this that I think is important. Okay, but practically speaking, you win that. All it does is get a redo. I think there's a strong likelihood if your client gets the redo he wants, he's going to end up with the worst sentence. Well, Your Honor, we don't know that. And I think it's important. That points off of accepting responsibility he wouldn't get if he went to trial. Well, Your Honor, and I can't dispute that. But what I think is important is when you look at even the case that was cited by the government, Lee v. United States, apparently what's important is not necessarily the outcome, per se. What's important is that did the client have the necessary information to make the correct choice when they decided to plea or, you know, if they had other information, would they have said let's just go to trial, Your Honor? And so I think what we'd ask the court to consider, Your Honor, is that Mr. Crane was a business person, Your Honor. It's undisputed. He'd been self-employed, had interactions with I think four or five different countries, had clients all over the country. Now, Your Honor, after this type of – after being convicted or pleading guilty to a felony offense involving child pornography, his job prospects are going to be limited. So a lot of – he may be forced to go back into business for himself, Your Honor. And a person who knows that after my matter is resolved, I'm likely going to have to go into business for myself, and if they know that one potential effect of me pleading would be a lifetime ban on computer use, they may approach it differently and say, you know what? That's Judge Costa's point. That's the problem here. What was the information that had he been told that it's reasonably likely he wouldn't have pled? What was – it's the information about a lifetime computer ban. It's not three-year supervised release. Well, I do think it is the three-year supervised release, Your Honor, because his trial counsel submitted an affidavit and it testified at the evidentiary hearing in this matter. I'm just going to interrupt because it's really hard for me to get past the plea agreement where at the bottom it's all caps, in bold, everything here you understand, it's been clearly said to you, and right there it says lifetime. Your Honor, again, Rule 11 of the criminal – Rules of Criminal Procedure requires certain information be given by the court to an individual at the change of plea hearing, Your Honor. It is undisputed that my client was giving incorrect information by the court as it relates to supervised release. And the question becomes, a person who's standing in front of a court who's not an attorney, has no prior legal experience, if they see something that they may have gone over in detail or they may have briefly skimmed over, and it conflicts with something that a person – not just a person, but that the court tells them during the actual change of plea hearing, that, look, you're facing a maximum of three years. The government does not correct it. His trial counsel does not correct it. Is that person wrong to believe? Well, when he saw the pre-sentence report that also said the lifetime maximum, which was in the plea agreement, why didn't he move to withdraw the plea if it mattered so much? Well, Your Honor, I would point out that at that time he had a trial counsel who, through his own acknowledgement, had never handled a federal criminal matter before, Your Honor. And so a lot of that does go back to his ineffective assistance claim. Perhaps if he had proven counsel, that's what would have happened, Your Honor. It didn't happen, and that's why we're before the court today. How would going to – if the problem is the lifetime supervision, how would going to trial, withdrawing the plea and going to trial, how would that help him in regards to the lifetime – the court's only more likely to impose lifetime supervision when he sees a serious sex offense like this coupled with a failure to accept responsibility. Wow. And, again, Your Honor, I think that's what Lee versus United States speak to. Again, the ultimate issue is not just the chance of trial success. The ultimate issue is that if an individual had certain information, if they had complete information, would they have made a different choice, Your Honor? And I believe that if my client had had the information that, hey – Why would he have gone to trial? What benefit would going to trial have offered him over the plea he got? You know, a lot of times people go to trial for a number of reasons. As a criminal defense attorney, we often advise people, look, you know, a lot of – this may turn on the jury. We've got to be very selective about who we pick in jury to get one person in there who may, you know, view the government's case differently. Sometimes – I don't know – Child porn – I mean, these cases, no one – they're rarely, if ever – I had a child porn case going to trial when I was a district court judge. I was worried about jury selection, finding suitable jurors. I asked a dozen of my colleagues in the Houston federal court, some of whom had been there for decades. I said, I need some help. I'm curious how many jurors I should bring in. Who's had a jury trial in a child pornography case? Only one of the 12 had ever tried one, and these are people who had been on the court for decades. I mean, that's the reality too. These cases, even more than most, don't go to trial for understandable reasons, especially when here he basically acknowledged – as I read it, there's basically a confession that he was the person in these chat rooms. Your Honor, that is correct. But again, even when you look at – and I keep going back to Lee versus United States. And that was a case where even the court acknowledged this person essentially had no defense if they'd gone to trial. However, in spite of not having a defense, if they'd had information about the consequences of a plea, they may have taken their chance, Your Honor, and that's what this goes to. If a client has complete information – it's not about necessarily the outcome of the trial, but if they have complete information, would I have made a different choice? And again, the court points out – Judge Wingate held a hearing. He heard from the defendant and the counsel. Correct. And at that point after that, does he say no Strickland violation? Well, he denied the client – my client's 2255. But what's important to, I would think, point out, Your Honor, is that the trial court who heard this information was also the trial court that gave my client the incorrect information at the change of plea hearing, Your Honor, that my client undoubtedly relied on in going through with the plea, Your Honor. And so I think the court has to consider all of that when it determines whether or not the trial court, in some ways, contributed to what occurred by not properly informing Mr. Crane of the maximum period of supervised release. That's the key is the period. It's not a – someone doing the conduct that he did would expect a computer internet ban. His concern is the time of it? Well, I think it's both, Your Honor, not necessarily a computer internet ban. He understood – and again, Your Honor, you bring an important point. What would he expect? And because his counsel did not inform him of the implications of pleading, he did not know what to expect, Your Honor. And I don't want us to assume that – He said that he was a businessman. Yes, sir, Your Honor. When the part that was quoted by Judge Costa in the PSR, he knew and had read and presumably understood the possibility of a lifetime ban. It was only afterwards that the judge misspoke about three years. Your Honor, as I appreciate it, the court misspoke at the change of plea hearing about the three years. The pre-sentence report would have came much later than that. And again, Your Honor – At which time before sentencing people do ask to withdraw their pleas. If they have prudent counsel that is properly advising them, Your Honor. And so again, we think that that goes to the heart of the ineffective assistance of counsel claim that's before this court. So your client wants – if he were to prevail, he wants to go to trial and roll the dice. Your Honor, I cannot speak for what my client wants. What my client – I know what we filed is – what my client would like at this time is for the court to vacate his guilty plea. And then once we're back in that position, we will proceed accordingly, Your Honor. Sometimes I see these cases and they're up here on appeal now. It's complicated. I often think if I were the government, sometimes I'd just say, you know what, I won't oppose. Let's just not oppose this. Go to trial because I think it's one of these be careful what you wish for situations. I mean, my understanding is there were talk of more charges if he went to trial beyond the 15-year maximum. I just think defendants get in this situation. They seem to think there's a plea option. There's a trial option. A lot of times defendants think there's some third option. But there really isn't. It's trial or plea. Those are the two options, even if he wins. And I just – I don't see, and I think the case law – even Lee still says we have to look at, are there reasons why trial would be – would have been a preferred option had he known all the information. I agree we have to look at that, but I'm still just – I just don't see what benefits trial offered, whereas it had some significant downside of a greater sentence that would lead us to conclude if he had perfect representation, he would have gone to trial. And again, Your Honor, I think Lee points out it's kind of hard to assume what would have happened in the sense of proceedings that never occurred. So, again, I don't know what would have happened at trial. I just know that if he had competent representation, he may or may not have made a different choice, and I think that's what's important. In order for a plea to occur, it should be knowing, voluntarily, and intelligent. Well, if you're giving bad information about the trial court, if your counsel gives you bad information, then I think we – I would hope that everyone could agree that it's not knowing, and that's what matters, not necessarily – as I appreciate the case law that's coming down from the Supreme Court, that's what matters, not necessarily the outcome. Would you agree that all the consequences that you say he might have misunderstood were correctly stated in the plea agreement? Well, the plea agreement I do not believe spoke to the lifetime or spoke to the computer ban. Rule 11 requires a lot of admonishments, the length of the sentence, the amount of a fine, any restitution obligation, the length of supervised release, which is what was stated incorrectly by the judge. Rule 11 does not, however, require the judge to warn a defendant who's pleading about the potential conditions of supervised release he or she might face. Doesn't that reflect the view that those factors really are secondary to the plea considerations and that would influence our look at the prejudice? No, Your Honor, I don't believe so because, number one, I don't know if the rules have been updated since certain cases have came down from the court, especially Padilla v. Kentucky, a 2010 Supreme Court case that's cited in the brief, Your Honor, because what that case does is it points out that any time there's a particularly severe penalty that may flow from a plea, the individual should be apprised of that in deciding whether or not to proceed with the plea or take it to trial. In deportation now courts should advise about at a plea hearing, but the rule doesn't require it, and I don't know any court that advises about potential conditions of supervised release. And again, because the rules don't require it, I don't think that that means that a lawyer should not advise their client of the likely severe ramifications. Did Mitchell say in the hearing he hadn't mentioned the computer? He did, Your Honor. I thought he said he had. I do believe the record indicates that there wasóI know what Mr. Mitchell mentioned, that this was his first time handling a federal criminal case. All of his criminal experience had been limited to state court where they don't do a whole lot of child pornography cases. And so what Mr. Mitchell stated was that he had some discussions with the probation office as well as the government, Your Honor, about how the pleaóessentially the ramifications of a plea, which I would argue is deficient for an attorney to do. Thank you. You've saved time for a moment. See you again next week. Good morning, Your Honors. Gaines Cleveland for government, and may it please the Court. Your Honors, the district court properly denied the defendant Crane's Sixth Amendment claim as to the possible conditions of his supervised release. The plea agreement, as Judge Higginson pointed out, was reviewed by counsel with the defendant, spelled out that he faced a life term of supervised release. The lawyer, Richard Mitchell, advised the defendant, according to his testimony at the 2255 hearing, about the wide latitude that judges have in imposing conditions of the supervised release. That's from record at 661. If that's all true, and I see where you're going, is that a sort of a no-prejudice, second-pronged Strickland analysis? It actually goes to both. It goes to the first prong in that it's not the obligation of the lawyer to consider every possible permutation. Because that's where Judge Wingate sort of stopped, right? He ruled that way. He didn't really say, and also I find that he wouldn't have changed his plea. Welló Is that open to debate? I think that did get developed not as much by Judge Wingate. The lawóobviously, we've had the decision in Lee that we cited in our 28J letter since then, which talks about the importance of a defendant's post hoc assertionsó I guess what I'm trying to say is it seems to me a little harder to rule confidently that Padilla would never apply to anything even as severe as these lifetime computer bans that our Court has criticized, as it would be sort of the direction of questions to opposing counsel, which is this record just does not show that the information that arguably wasn't given to him would have changed his decision to plead. What Padilla is, Your Honor, Your Honor's know, is a carve-out from theó State courts and scholars and even one circuit, they're beginning to nibble at it, right, and extend it. The law that still prevails, certainly in this circuit, is that there's a distinction between collateral consequences of a guilty plea and direct consequences of a guilty plea, and special conditions we submit fall in the category of collateral consequences. What about you can't ever have a gun after a felony or you can't vote? Are those direct? Some of those are direct consequences. Really? I think as a result of a felony, you obviously have a directó I know, but then so you think the law says that before a defendant pleads to a felony, the attorney has to tell them, do you know you won't be able to vote, since that's a direct consequence? Well, no. In some jurisdictions, that varies. So let'sóI'm reallyó That is covered in the Rule 11 colloquy, unlike a listing of possible conditions. That's exactly right. And, of course, you haveówe're talking about the discretion of the district judge. The district judge orders up the precedence report. The precedence report makes a recommendation, and that's the type of collateral consequence we're talking about here. And an immediate effect that isn't discussed often is, in essence, what Judge Kostrup mentioned. They can be changed in the future. They can be modified. The technology can change. There was a case that was just decided onó What's his release date, if hisó 2023, if he doesn'tówithout any consideration for good time credit. And who knows wható Almost everything will be a computer by then. It will all be computerized. There was a decision from this court that was just decided on an unpublished decision, which I think was very interesting. Basically, the courtóthe defendant was saying, look, I can't even use a telephone. And the court, in footnote 2 of this decision, the U.S. v. Carpenter, said, well, to the extent the technology changes and he can adequately demonstrate his inability to obtain a phone that does not have Internet access, he may seek modification. So it's all subject to beingó And the filtering and monitoring software is only going to get more effective as time goes on. That's exactly right. That's exactly right. I want to ask you about something that troubled me in this case, one of the things that troubled me. The defense lawyeróand I understand he didn't have federal experience, so I would understand why he'd want to get educated about the sentencing guidelines. But it really troubled me. I'm curious if this is just common in your district. He went to the probation officer. First of all, in the districts I'm aware of, a probation officer wouldn't even be assigned to do the PSR until the conviction happens. But he goes to the probation officer, and the probation officer basically says, my guess is the guidelines are going to be about seven years. The reason that troubles me, it turns out, as here, the PSR was about double that. I mean, that just seems to me a recipe for trouble when probation officers pre-plea are giving estimates of the guidelines. I mean, all the admonishments at the hearing are, you know, no one knows what your guidelines are going to be. You understand that. You might haveóyour lawyer might have given you a guess, but you can't rely on that. I think some probation officers are fairly generous in giving information. Obviously, it should be a strong caveat that here is what I see as, you know, a base offense level. You're telling me X. You're telling me Y. You're telling me Z. Z, if I plug those in, this is the result that I think might beó But you've heard of this happening. This isn't an isolated incident. It happens from time to time. There are some districts where the government unilaterally makes a projection about what the guidelines are going to be, and that's done in some circuits, but not here, at least in our district. Unless the Court has any further questions, we must move on. That sounds good. All right. You've got rebuttal. Thank you. I would briefly point out to respond to a couple of things that came out while Counsel Officer was speaking. I do agree with the Court's assessment about the troubling nature of a defense attorney deferring to probation to advise on a client, and I will point out that there isn'tó I would imagine that there would be an issue of reliability when a defense attorney tells his client, hey, I spoke to probation, and this is what they advised. If the defense attorney does not do independent research to confirm or deny that, that, I think, sets the clients up for a lot of problems. I would also point out, Your Honor, the ABA standards of criminal justice favor a lawyer advising a client about the potential collateral consequences of a guilty plea. Further, what Padilla does is it kind of changes from it just being about direct to collateral consequences, especially when there's a particularly severe consequence. And it says, look, if there's a severe consequence, the Sixth Amendment requires an attorney to provide advice about the risk associated with the consequence, Your Honor, and it's undisputed that in this case that did not happen. Further, Your Honor, what's extremely important is that this case is ripe with instances where Mr. Crane was filed, both by his attorney and by the trial court. And I know we can kind of speculate about what may or may not have happened at trial, but, again, based on Lee, I don't think that that's the ultimate determination. The question really before the court is, did he receive effective assistance of counsel? If he had received effective assistance of counsel, would he have made the same choice? And I think that what the record shows is that he did not receive effective assistance of counsel, and based on his continued litigation of this matter, that if he had received effective assistance, he would have made a different choice. And so we'd ask the court to vacate the gifted plea in this matter. Thank you very much. Thank you.